JUSTICE GABRIEL, specially concurring.
¶33 I join the majority's opinion in full because I believe that the conclusion that it reaches is compelled by applicable statutory and case law. I write separately, however, to express my concern that the result that the law dictates, which I fear will deter many juvenile offenders who are charged as adults from seeking a reverse transfer of their cases, may not be what the legislature intended when it enacted the reverse-transfer statute.
¶34 The reverse-transfer statute, section 19-2-517(3), C.R.S. (2018), is part of the Colorado Children's Code, sections 19-1-101 to 19-7-103, C.R.S. (2018). That Code provides, in pertinent part, that the purpose of the juvenile justice system is to hold public safety "paramount" while at the same time taking into consideration "the best interests of the juvenile, the victim, and the community in providing appropriate treatment to reduce the rate of recidivism in the juvenile justice system and to assist the juvenile in becoming a productive member of society." § 19-2-102(1). Consistent with this purpose, the Code recognizes that, in certain circumstances, the juvenile and the community would be better served by having a juvenile offender tried in juvenile court, rather than as an adult in district court. See § 19-2-517(3). Such a view is also consistent with the Supreme Court's recognition that juvenile offenders are fundamentally different from adults for purposes of sentencing because (1) they lack maturity and have "an underdeveloped sense of responsibility"; (2) they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and (3) their characters are "not as well formed" as those of adults. Roper v. Simmons , 543 U.S. 551, 569-70, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (quoting Johnson v. Texas , 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) ).
¶35 Concluding that a juvenile waives privilege as to certain information that he or she wishes to present at a reverse-transfer hearing arguably undermines the foregoing principles because it potentially chills a juvenile offender's exercise of the right to seek a reverse transfer of his or her case in circumstances in which the juvenile and the community will be better served by adjudicatory proceedings in juvenile court.
¶36 It is not clear to me that the legislature intended such a result, nor can I perceive a legitimate basis for chilling a juvenile offender's right to seek a reverse transfer in this way.
¶37 Adopting a limited waiver of privilege in the present context will not prejudice the People because they will receive the information at issue in advance of the reverse-transfer hearing so that they will be able to prepare properly. Moreover, as everyone in this case appears to concede, information of the type at issue is unlikely to be admissible at the trial on the merits. Accordingly, I find it difficult to discern the interests that the People are seeking to vindicate in arguing that Brown would waive any privileges that he possesses by introducing at a reverse-transfer *436 hearing evidence that section 19-2-517(3)(b) essentially compels him to produce.
¶38 For these reasons, although applicable law compels me to join the majority opinion, I respectfully urge the General Assembly to clarify whether it intended a waiver of privilege in the circumstances presented here and, if not, to enact legislation that establishes appropriate limits on any waiver of privilege resulting from a juvenile's presentation of statutorily mandated evidence at a reverse-transfer hearing.